UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICK BUCCIARELLI and
RICK BUCCIARELLI AND ASSOCIATES, INC,

       Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

       Defendant.
_____/

Case No. 08-cv-14349.

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT (docket 21), GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (docket 28), GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (docket 29), AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (docket 15)**

This is a diversity action by the plaintiffs, a former insurance agent of the defendant insurance company and his agency, for damages for fraud, violation of the Michigan Franchise Investment Law, breach of contract and retaliation and unjust enrichment. This matter comes before the Court on two motions. First, defendant Nationwide Mutual Insurance Company ("Nationwide") moves for partial judgment on the pleadings as to Count I, II and IV of the complaint. Second, the plaintiffs Rick Bucciarelli and Rick Bucciarelli and Associates (collectively "Bucciarelli") have opposed Nationwide's motion and have filed a cross-motion to amend the complaint. Each party has also filed motions to permit supplemental briefing. For the reasons stated below, the Court will grant the pending motions for leave to file supplemental briefs, will grant plaintiffs' motion to amend

the complaint, and will grant in part and deny in part defendant's motion for partial judgment on the pleadings.

## FACTS

Plaintiff Rick Bucciarelli is a resident of Michigan and sole owner of plaintiff Rick Bucciarelli and Associates, an insurance agency. Bucciarelli entered into an Independent Contractor Agent's Agreement, effective June 1, 2002, to sell insurance and financial products offered by Nationwide and its companies. The agreement was with Nationwide, the defendant here, plus about nine other related insurance companies. Bucciarelli alleges on information and belief that the defendant is the parent of these related insurance companies, and the defendant is held by Nationwide Financial Services, Inc., a company in which the defendant is the majority shareholder. The amended complaint further alleges that before becoming an independent contractor, the plaintiffs had to agree to what they term a "franchise fee" of $12,900 for four-year-old furniture and approximately $3,000 for four year old computers.

Bucciarelli alleges that Nationwide decided to aggressively increase its number of storefront offices in order to become the number three insurer by share in 2009 and, in order to achieve this goal, Nationwide provided its managers with bonus incentives based upon the development of additional local offices and other expansion criteria. Amended Complaint ¶ 8. Bucciarelli alleges that Nationwide required people wanting to be independent agents to enter into "intentionally vague" appointment agreements that "relied on subsequent addendum documents and verbal policies that, as it turned out, varied substantially from one another and often contradicted the original agreement. *Id.* Bucciarelli alleges that Nationwide told him that it would pursue mutually devised and

acceptable growth plans and pressured agents to take out loans and expand, telling them they were not "team players" if they did not pursue growth initiatives.  *Id.* ¶ 11.

Bucciarelli alleges that when he or any agent acquired a Nationwide book of business, merged with an existing Nationwide agency, opened a new Nationwide location or purchased an independent agency to be converted into a Nationwide agency, the agent entered into a CAP (Capital Access Program) loan with a Nationwide Bank, a bank owned by Nationwide, which provided that the agent could have the loan waived if he met performance requirements found in the pro forma and business plans accompanying the loan.  *Id.* ¶ 12.  Bucciarelli alleges that these performance requirements were determined totally by Nationwide to the detriment of the agents.  *Id.*  The loans contained a cross-default provision, so that the default of one loan created a default in all other loans with Nationwide Bank.  Bucciarelli alleged that he was induced to take out two loans, one for the "Burton merger" and for opening an office in Westland, Michigan.  *Id.* ¶ 15.

The performance requirements for Bucciarelli to have his loans from Nationwide Bank waived were contained in a pro forma, dated September 15, 2003, which was prepared by Joe Sheffieck (presumably a Nationwide employee).  Amended Complaint, ¶ 17 and Exhibit A to Amended Complaint.  Bucciarelli alleges that Nationwide knowingly misrepresented the assumptions and estimates contained in this pro forma as being reasonable and achievable.  Amended Complaint, ¶ 17.  He also alleges that the performance goals set by Nationwide, ranging from 4.5% to 11.5%, were not achievable and the company had never performed anywhere near these growth levels due to Nationwide's uncompetitive rates.  Id. ¶ 16.

Bucciarelli then sets out various unreasonable and unwise marketing and underwriting programs that Nationwide required him follow.   Bucciarelli alleges that

3

Nationwide started programs, understaffed them and then reversed itself; it encouraged the hiring of associates for programs that became difficult or impossible to sell due to uncompetitive pricing; it laid off dozens of employees in a national reorganization that resulted in significant delays and customers going elsewhere; it changed its guidelines to become the only insurance company requiring lead paint certificates for all dwelling fire policies, resulting in the loss of numerous customers; and it switched its emphasis to commercial policies but then put limitations on those policies that made them impossible to write while at the same time unfairly competed with its agents in the area of commercial coverage. Amended Complaint ¶ 19. Bucciarelli alleges that these actions resulted in a customer base that was eroding faster than the industry standard. *Id.* ¶ 20. Nonetheless, Bucciarelli alleges, Nationwide continued to profit due to falling loss ratios and expanding storefront locations subsidized by agents, while none of the agents met their production requirements. *Id.* ¶ 21. As a result, none of the CAP loans were waived and the agents were charged back interest to the benefit of Nationwide's bank. *Id.* Bucciarelli alleges that Nationwide constantly changed its goals and requirements to preclude its agents from ever reaching their required goals. Id. ¶ 26.

Bucciarelli alleges in his amended complaint that Nationwide admitted through a "secret program" to "make things right" for six of its Michigan agents that there were misrepresentations in the CAP program and the pro formas that was counter to what was represented to agents to induce them to expand their staff and number of offices. Amended Complaint, ¶ 25.

Nationwide decided to employ a direct writer system beginning in 2008 to the detriment of exclusive agents such as Bucciarelli, and began forcing agents to resign beginning in 2007. Amended Complaint ¶ 28. Bucciarelli alleges that Nationwide never

4

revealed to him or to other agents its plan of a direct writer system, preventing him and other agents from making intelligent choices on CAP loans, hiring employees and opening storefronts. Amended Complaint ¶ 30.

## PROCEDURAL POSTURE

The plaintiffs filed the complaint in this matter on October 14, 2008. The defendant answered the complaint on December 18, 2008 and filed a counterclaim for a balance that they assert is still due on a $100,000 loan Bucciarelli received from Nationwide in 2003, and a claim for equitable indemnification for an amount Nationwide paid to Nationwide Bank as guarantor for the loan from Nationwide Bank to Bucciarelli.

On January 27, 2009, Nationwide filed the present motion for partial judgment on the pleadings (docket entry 15), seeking judgment as a matter of law on Counts I, II and IV of the complaint, as well as dismissal of plaintiffs' claim for punitive damages. Bucciarelli responded to Nationwide's motion for judgment on the pleadings and, before the hearing was set, filed the present motion to amend the complaint, attaching to the motion a proposed first amended complaint (docket entry 21 and Exhibit A). Bucciarelli's motion to amend the complaint argued that plaintiffs desired to add greater specificity to their allegations of fraud in the inducement and breach of contract, and wished to add allegations of violations against Nationwide as well as its wholly owned subsidiary Nationwide Bank for violations of federal and state banking laws. Nationwide filed a response opposing Bucciarelli's motion to amend the complaint (docket entry 24), addressing the proposed changes to the complaint and arguing that the motion to amend should be denied on the grounds of futility because the proposed amended complaint still fails to state a claim for relief.

The Court held a hearing on the pending motions on April 7, 2009. Following the hearing, the Court entered a stipulated order attaching the pro forma referenced in the plaintiffs' reply brief as Exhibit A to the proposed first amended complaint (docket entry 27).

Nationwide also filed a motion for leave to file a supplement to its motion for judgment on the pleadings and a supplement to its response to plaintiffs' motion to amend the complaint (docket entry 28). In Nationwide's proposed supplement to its motion for judgment on the pleadings and response to plaintiff's motion to amend, Nationwide addresses the pro forma that was filed as an exhibit to the complaint by stipulation of the parties on May 8, 2009 and puts forth arguments as to why the pro forma supports Nationwide's motion to dismiss and response to plaintiff's motion to amend the complaint.

On June 16, plaintiffs filed their own motion for leave to file a supplement to their motion to amend the complaint and response to Nationwide's motion for judgment on the pleadings. (docket entry 29). The Court will grant both motions for leave to file supplemental briefs in order to facilitate the just, speedy and inexpensive determination of the pending motions. Fed. R. Civ. P. 1.

## ANALYSIS

I.  Motion to Amend the Complaint

Rule 15(a) of the Federal Rules of Civil Procedure govern amendments of the pleadings before trial. Proposed amendments to the pleadings more than twenty days after the last responsive pleading is filed require the opposing party's written consent or leave of the court, and the court should freely give leave when justice requires. Fed. R. Civ. P. 15(a)(2). Defendant Nationwide has not consented to amendment, and opposes plaintiffs' motion to amend on the grounds that any amendment would be futile.

6

Although leave to amend is to be freely given when justice requires, leave to amend may be appropriate if the amendment is brought in bad faith or for dilatory purposes, where there has been repeated failure to cure deficiencies by amendments previously allowed, or amendment would result in undue delay or prejudice to the opposing party or would be futile.  *Morse v. R. Clayton McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).  There is no suggestion here that the amendment has been proposed in bad faith or for dilatory purposes or would result in undue delay or prejudice to the defendant.  Defendant, however, cites *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) for the proposition that a proposed amendment is futile if the complaint as amended could not withstand a Rule 12(b)(6) motion to dismiss.

This Court does not read the *Rose* case as requiring the Court to determine futility before it grants a motion to amend the complaint, but rather as stating that futility is a permissible basis for denying a motion to amend the complaint.  The Court in this instance is guided by Rule 1 of the Federal Rules of Civil Procedure, which direct that the federal rules be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Given the procedural posture of the present case, and the fact that the parties have briefed the sufficiency of the amended complaint as well as the sufficiency of the original complaint, the Court determines that justice would be served and the action expedited by granting the plaintiffs' motion to amend the complaint and proceeding to determine the sufficiency of the complaint as amended for purposes of considering the pending motion for judgment on the pleadings.  The plaintiffs' motion to amend the complaint will therefore be granted and the Court will consider the defendants' motion for judgment on the pleadings as a motion for judgment on the pleadings of the proposed first amended complaint.

II.     Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is evaluated under the same standard as a motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).   In ruling on a motion for judgment on the pleadings, the Court may consider documents attached to, incorporated by or referred to in the pleadings. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  The well-pleaded material allegations of the party opposing the motion for judgment on the pleadings must be taken as true, but the Court need not accept as true legal conclusions or unwarranted factual inferences.  *JP Morgan Chase Bank*, 510 F.3d at 581.  A motion for judgment on the pleadings is to be granted when no material issue of fact exists and the moving is entitled to judgment as a matter of law.  *Id.*

The complaint and amended complaint each have four counts.  Count I is for common-law fraud in the inducement of the loan contract.  Count II is for fraud in violation of Michigan's Franchise Investment Law.  Count III is for breach of contract.  And Count IV is for unjust enrichment.  Nationwide has moved for judgment on the pleadings with respect to Counts I, II, and IV and with respect to plaintiffs' punitive damages claims.  Nationwide argues that the fraud claims in Count I should be dismissed because they are not pleaded with sufficient specificity, that the Michigan Franchise Law claim in Count II should be dismissed because the arrangement between Bucciarelli and Nationwide did not constitute a franchise, that Count IV should be dismissed because a plaintiff cannot state a claim for unjust enrichment in the face of an express contract; and that neither Ohio nor Michigan law permit punitive damages with these claims.

> A. Does the Complaint Fail to Plead with Particularity Plaintiffs'
> <u>Claims of Fraud in the Inducement/Intentional Misrepresentation?</u>

Defendants argue that Count I of the amended complaint should be dismissed because plaintiffs have failed to plead their claims of fraud in the inducement and intentional misrepresentation with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 9(b) provides that " In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally".

In *Coffey v. Foamex LP*, 2 F. 3d 157, 161-62 (6th Cir. 1993) the Sixth Circuit elaborated on what is required to state with particularity the circumstances constituting fraud or mistake:

> The Sixth Circuit reads this rule liberally, however, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." However, "allegations of fraudulent misrepresentation must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." The threshold test is whether the complaint places the defendant on "sufficient notice of the misrepresentation," allowing the defendants to "answer, addressing in an informed way plaintiffs [sic] claim of fraud.""

*Coffey*, 2 F.3d at 161-62 (citations omitted).

Nationwide argues that Bucciarelli's complaint doesn't satisfy these standards for a number of reasons. First, Nationwide asserts that although Bucciarelli asserts that Nationwide dictated the terms of the pro formas and other projections required for loan waiver, the loan documents themselves say that Bucciarelli, not Nationwide, was the one who drew up the business plans. Second, Nationwide points out that allegations in the complaint that state that Bucciarelli was induced to take out loans for the Barton merger and opening a Westland office fail to identify who at Nationwide pressured him to take out the loans and how he was pressured. Nationwide also asserts that changes in product

9

offerings cannot form the basis for a fraud claim because Bucciarelli understood and agreed to such changes.  Finally, as to the statements in the pro forma, Nationwide alleges that these statements cannot form the basis for a misrepresentation claim because, under Michigan law, misrepresentations must relate to past or existing facts.  *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).  Promises regarding the future are considered to be contractual and cannot form the basis of a misrepresentation claim.  *Id.*  Nationwide argues that the pro forma merely sets out various "assumptions" and "projections" that were merely educated guesses or opinions about the succeeding five years.

Bucciarelli argues in response that the alleged misrepresentations in the pro forma are actionable because they are not a future promise but a statement of present facts.  In support of this argument, he cites *Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547 (6th Cir. 2000).  In *Little Caesar*, plaintiff, a Little Caesar franchisee, asserted a fraud claim based upon the representation of the franchisor's real estate manager that certain K-Mart pizza franchises would not compete with the plaintiff's Little Caesar franchise because those franchises targeted in-store customers only, that the K-Mart franchises would enhance the overall performance of the plaintiff's franchise and that poor management was the reason for the poor performance of the current franchisee.  The Sixth Circuit reversed the trial court's grant of summary judgment to the defendant on the grounds that the representations regarding whether the K-Mart franchises competed referred to past, current and future events and on the grounds that defendant's real estate manager had specialized knowledge and made specific statements capable of verification.    The Court finds that the complaint does make the fraudulent scheme clear: Bucciarelli claims that Nationwide wanted to get business for its wholly-owned bank by duping its agents into taking out loans

10

by convincing them they wouldn't have to pay them off. Nationwide is correct that the contract states that the agent and the insurer drew up the business plans together. Bucciarelli, however, has clearly alleged that this statement in the contract is false, and Nationwide has offered no authority making the contractual language binding on him in this Court.

Based upon *Little Caesar*, the Court finds that judgment as a matter of law is not appropriate on the issue of whether the representations contained in the pro forma are actionable misrepresentations. First, the parties are not even in agreement about who drafted the pro forma. Further, under *Little Caesar*, the relationship of the parties and the allegedly unequal access to information may be relevant to the question of whether statements in the pro forma can be deemed to be misrepresentations. There is simply not enough information before the Court for it to rule as a matter of law that the representations in the pro forma were solely related to future promises, as opposed to representations about existing facts that were verifiable. The Court will therefore deny judgment on the pleadings as to Bucciarelli's fraud claim to the extent it is based upon the pro forma. The Court will, however, grant judgment on the pleadings as to the fraud claim to the extent it is based upon allegations in the complaint that Bucciarelli was fraudulently induced to take out loans for the Barton merger and open a Westland office by statements by unknown persons, because such allegations fail to identify who at Nationwide pressured him to take out the loans and how he was pressured, and therefore fail to satisfy the exacting standards of Rule 9(b) of the Federal Rules of Civil Procedure.

    B.    Does the Complaint Fail to State a Claim
<br>          Under the Michigan Franchise Investment Law?

The second count of the complaint states a claim under the Michigan Franchise Investment Law ("MFIL"), MCL 445.1501 *et seq*. The MFIL generally prohibits deceptive practices in the sale or purchase of franchises. *See* MCL 445.1505. Nationwide moves for judgment on the pleadings on Count II on the grounds that the MFIL does not apply to Nationwide's contract with Bucciarelli and therefore Bucciarelli cannot state a claim under the MFIL. First, Nationwide claims that as a matter of law the MFIL never covers insurance agency agreements. Second, Nationwide claims that even if the MFIL does govern some insurance agency agreements, it does not cover Bucciarelli's agreement.

    1.    Does the MFIL apply to the highly regulated insurance field?

Nationwide argues that the Michigan insurance code comprehensively regulates the insurance industry and that applying the franchise law to the insurance industry is incompatible with such comprehensive regulation. Nationwide also points to decisions in other states that, according to Nationwide, have held that franchise laws in those states are inapplicable with the insurance industry. See Motion for Summary Judgment at 10-11 (citing cases from New York, New Jersey, Virginia, Florida, Missouri and Illinois).

There are no Michigan cases that directly address this question. Neither Michigan's franchise law nor the decisions from other states cited by Nationwide explicitly provides a categorical exception for insurance contracts. Instead, the relevant statutes – including Michigan's -- simply provide generic characteristics of the contracts that they cover. In determining whether insurance agency agreements are governed by these statutes, the courts in other states have simply considered whether the contracts before them exhibited these generic characteristics. In some situations the courts appear to have gone slightly beyond this, and considered whether insurance agency agreements in general exhibit

these characteristics, but absent clearer direction from the Michigan courts or the statute, this Court will not hold as a matter of law that the MFIL does not apply to insurance contracts.

> 2. Does the Independent Contractor Agent's Agreement Create a Franchise under the MFIL?

The MFIL applies to only to franchises. Nationwide argues that the agreements between Bucciarelli and Nationwide do not create or deal with a franchise and therefore the MFIL does not apply.

The MFIL defines a franchise as a contract or agreement that meets each of the following elements: 1) the franchisee "is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;" 2) the franchisee "is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate;' and, 3) the franchisee "is required to pay, directly or indirectly, a franchise fee." MCL 445.1502. Defendant argues that the complaint and amended complaint fail to state a claim because it fails to meet two of these three elements required to constitute a franchise. Specifically, defendant argues that the complaint and the amended complaint fails to establish either that the plaintiffs were required to pay a franchise fee or that the plaintiffs were "granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor." The Court will address each of these contentions in turn.

>   a.  Were the plaintiffs granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by the franchisor?

Nationwide argues that the MFIL does not apply to Bucciarelli's contract with Nationwide because Bucciarelli was not "granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plain or system prescribed in substantial part" by Nationwide. Nationwide asserts that the Michigan courts have said that insurance agents are merely "order takers," *Harts v. Farmers Ins. Exch.*, 461 Mich. 1, 8-9 (1999), while the insurer owns the policies and sells them. The Illinois court, which has a franchise law that is identical in relevant part to Michigan's, has said that Illinois insurance agents do not fall within the protections of the Illinois franchise law because they do not sell insurance because "the right to sell consists of an unqualified authorization to transfer a product at the point and moment of the agreement to sell or authority to commit a grantor to sell" and insurance agents do not have that authority. *Vitkauskas v. State Farm Mut. Auto Ins. Co.*, 509 N.E.2d 1385, 1391 (Ill. App. 1987)

Nationwide is correct that Illinois has held that agents cannot "sell[]"insurance. But *Vitkauskas*, the Illinois decision, ignores part of the language of Illinois's own statute, which is identical to Michigan's. Specifically, MCL 445.1502(3)(a) makes someone a franchisee if he is engaged in either selling, offering or distributing goods or services. Of course the legal meaning of "offering" requires that an acceptance would create a contract, and either transfer ownership or create a legal obligation to transfer ownership. If, as Nationwide maintains, Bucciarelli does not own insurance policies and is not authorized to contractually bind Nationwide, then he obviously cannot "offer" them in this sense. But if the word "offering" in the statute were interpreted to have only this meaning, it would be entirely redundant of the word "selling" – if one is in the business of making legally binding offers

14

of goods or services, then one is also in the business of selling them (whenever the offers are accepted). Therefore, it appears that the term "offer," as it appears in the statute, must be interpreted more broadly and less technically, to refer to making goods or services available in a practical rather than a legal sense. By soliciting orders for insurance coverage, with the intention and expectation that the orders (or at least most of them) will be accepted, insurance agents would fall within this definition. Thus, the Court holds that the contract between Bucciarelli and Nationwide falls within this part of the definition of "franchise" in the MFIL.

          b.    Did the Agreement require the plaintiffs to pay a franchise fee?

The third element required for a franchise to exist is that the franchisee is "required to pay . . . a franchise fee." MCL 445.1502(3)(c). A franchise fee is defined in MCL 445.1503(1) as follows:

> "Franchise fee" means a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payments for goods and services. The following are not the payment of a franchise fee:
>     (a) The purchase or agreement to purchase goods, equipment, or fixtures directly or on consignment at a bona fide wholesale price. . . . .

The definition of "franchise fee is further refined in Mich. Admin. Code 445.101(2), which provides in relevant part:

> (2) The words "fee or charge" as used in section 3(1) of the act include, but are not limited to:
>     (a) Present payments, deferred payments, and royalty payments required of the franchisee by the franchisor arising from sales of goods or services offered by the franchisee or its agents or affiliates, or payments as a condition to maintaining the franchise relationship other than payment for goods at a bona fide wholesale price.
>     . . . .
>     (c) Payments for services. These payments are presumed to be in part for the right granted to the franchisee to engage in the franchise business. Ideas, instruction, training, and other programs are services and not goods, irrespective of whether offered, distributed, or communicated by word of mouth, through instructions or lectures, in written or printed form, by record or tape recording, or any combination thereof.

15

The Independent Contractor's Agreement itself says nothing about the payment of money or interest by Bucciarelli for the right to enter the business. Likewise, the Performance Agreement apparently required Bucciarelli to reimburse Nationwide for interest payments if he failed to meet the growth targets, but there is no indication that he was required to do so for the right to engage in the insurance business. In fact, it appears both from the complaint and from the loan documents themselves that Bucciarelli would have been perfectly free to open the Westland office using his own money (or a loan procured elsewhere), without ever obligating himself to make any interest payments to Nationwide at all.

Furthermore, authority in Michigan interpreting the MFIL suggests that the taking of the loan would not as a matter of law constitute a franchise fee even if Bucciarelli were required to take the loan out in order to do business with Nationwide. In *Hamade v. Sunoco Inc. (R&M)*, 271 Mich. App. 145, 163-64 (2006), the Michigan Court of Appeals held that even assuming the plaintiff took out a loan from the defendant, the repayment of interest under such a loan would not constitute a franchise fee unless there was evidence that the plaintiff was required to accept a loan in order to enter into the agreement with the defendant or that the interest payable on the loan was in excess of a fair market rate. Here, there are no allegations either that the plaintiff was required to take out a loan or that the interest payable on the loan exceeded a fair market rate, and therefore the loan itself cannot constitute a franchise fee. See also *Boeve v. Nationwide Mutual Ins. Co.*, 08-cv-12213, 2008 WL 3915011, *5-6 (E.D. Mich. Aug. 20, 2008) (Steeh, J.) (payment of fees and interest on a similar Nationwide loan did not amount to a franchise fee)

Bucciarelli's amended complaint, however, also alleges that he was required to pay a "franchise fee" in the form of office supplies that Nationwide required him to purchase. The amended complaint contains the following allegations regarding a franchise fee:

> 2. . . .. Before becoming an independent contractor, plaintiffs had to agree to a franchise fee of $12,900 for four year old furniture and approximately $3,000 for four year old computers.
> . . ..
>
> 44. For the right to engage in and represent Nationwide's business, Plaintiffs paid money and interest to Defendant including approximately $16,000, among various other direct and indirect fees, as a condition of the parties' Independent Contractor Agent's and Performance Agreements, in exchange for assignment of policies to Plaintiff's agency.
> . . . .

This portion of the complaint should be evaluated under the pleading standards applicable to Rule 8 of the Federal Rules of Civil Procedure. As the Supreme Court has recently noted, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). Where there are well-pleaded factual allegations, the Court must assume their truth "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Under the *Iqbal* standard, Bucciarelli's allegation that the payment for the furniture and computers is a "franchise fee" is a legal conclusion that is not entitled to a presumption of truth. The factual allegations made by Bucciarelli that are entitled to a presumption of truth are that, before becoming an independent contractor he had to agree to pay $12,900 for four year old furniture and approximately $3,000 for four year old computers. The purchase of goods is not, however, considered to be a franchise fee where the goods are purchased at a bona fide wholesale price. While it seems unlikely as a factual matter that Bucciarelli will be able to offer evidence in support of

17

the allegation that he was required to purchase excessively priced office supplies as a condition of becoming a Nationwide agent, the Court is not permitted to make such factual determinations on a motion for judgment on the pleadings. The leading case in this area, *Hamade*, 271 Mich. App. 145, suggests that the question of whether goods required to be purchased are purchased at a "bona fide wholesale price" and whether there is a well established market for those goods may present a factual question. The Court determines that this issue is one better dealt with on summary judgment or at trial and therefore will not grant defendant's motion for judgment on the pleadings on the basis that there is no allegations supporting the payment of a franchise fee. Therefore, the Court will deny defendant's motion to dismiss Count II of the amended complaint.

> C. Should Count IV, Plaintiff's Claim For Unjust Enrichment, Be Dismissed On the Grounds that Unjust Enrichment Is Not Available When There Is An Express Contract Governing The Same Subject?

Defendants argue that plaintiffs' claim for unjust enrichment contained in Count IV of the complaint and amended complaint must be dismissed because under Ohio law, the remedy of unjust enrichment is not available where there is a contract governing the same subject. *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 544 N.E.2d 920 (Ohio 1989). ("In the absence of fraud, illegality or bad faith, [a plaintiff is] entitled to compensation only in accordance with the terms of the written agreement.") Michigan law is the same. *See Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 479 (2003) ("a contract will be implied only if there is no express contract covering the same subject matter").

Nationwide argues that Bucciarelli cannot state a claim for unjust enrichment because there is an express contract governing the same subject matter. Bucciarelli's briefs do not contest this point and the Court therefore presumes that plaintiffs do not

opposed dismissal of their unjust enrichment claim. That claim will therefore be dismissed.

        D.     <u>Should Plaintiffs' Claims for Punitive Damages be Dismissed?</u>

Defendants argue that, under Michigan law, punitive damages are only permitted if a statute allows for punitive damages. *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 765 (2004). Defendants also argue that under Ohio law, "Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, "[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Lake Ridge Academy v. Carney*, 613 N.E.2d 183, 187 (1993) (citing Restatement of Contracts, 2d, § 355). Nationwide argues that because Bucciarelli has not pleaded that the breach of contract was also a tort, or asserted that any Michigan statute makes punitive damages available for common-law fraud in the inducement or fraud under the Franchise Investment Law, Bucciarelli's claim for punitive damages must be dismissed.

Only Bucciarelli's contract claim is governed by Ohio law, and there does not seem to be any underlying tort. Bucciarelli's fraud claims, MFIL claim and unjust enrichment claim would be governed by Michigan law, and the Court is aware of no Michigan authority authorizing punitive damages awards for fraud claims, MFIL claims, or unjust enrichment claims. As with the unjust enrichment claim, Bucciarelli does not address or oppose defendant's arguments that punitive damages are not allowable for the claims pled. The Court will therefore grant defendant's motion for judgment on the pleadings as to Bucciarelli's punitive damages claims.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** as follows:

Plaintiffs' Motion to Amend the Complaint (docket no. 21) is **GRANTED**;

Defendant's Motion For Leave to File Supplement to its Motion for Judgment on the Pleadings and Supplement to its Response to Plaintiffs' Motion to Amend (docket no. 28) is **GRANTED**;

Plaintiffs' Motion for Leave to File Supplement to their Motion to Amend the Complaint as Well as Response to Nationwide's Motion to Dismiss on the Pleadings (docket no. 29) is **GRANTED**; and

Nationwide's Motion for Judgment on the Pleadings (docket no. 15) is **GRANTED IN PART AND DENIED IN PART** as outlined in the opinion above and therefore Count I of the amended complaint is dismissed without prejudice only to the extent that plaintiffs' fraud allegations are based upon statements from unknown persons inducing plaintiffs to take out loans for the Burton merger and Westfield office; Count III of the amended complaint is dismissed and plaintiffs' claims for punitive damages are dismissed.

**SO ORDERED**.

                 s/Stephen J. Murphy, III
                 STEPHEN J. MURPHY, III
                 United States District Judge

Dated: August 26, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 26, 2009, by electronic and/or ordinary mail.

                 s/Alissa Greer
                 Case Manager